PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANPREET SINGH, | ) | |
| | ) | CASE NO.  3:26-CV-133 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FREDRICK W. STEVENS, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Respondents. | ) | [Resolving ECF No. 1 and ECF No. 10] |

Pending before the Court is Samanpreet Singh's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  The matter is fully briefed.  Resp. Response Br., ECF No. 8; Pet. Traverse Br., ECF No. 9.  Being duly advised, having reviewed the parties' briefs and the applicable law, the petition for habeas relief under § 2241 (ECF No. 1) is granted. Petitioner's Motion for Temporary Restraining Order (ECF No. 10) is denied as moot.

## I.     BACKGROUND

### A.  Statutory Framework

Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), "unaccompanied alien child[ren]" arriving in the United States are so designated and placed in the custody of the Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR").  6 U.S.C. § 279(a)–(b)(1)(A), (g)(2); 8 U.S.C. § 1232(b)(3).  "The detention of unaccompanied alien children is governed by the TVPRA, which does not mandate detention."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing 8 U.S.C. § 1232(d)(2)(A)–(B)).  Instead, unaccompanied minors "shall be promptly placed in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  After

(3:26CV133)

considering any danger the minor poses to themselves or the community, ORR may place them

in an Unaccompanied Refugee Minor program or with suitable family members.  *Id*.  If detained,

a monthly detention review is required.  *Id*.

When such individuals "age out" of ORR custody (*i.e.*, reach the age of 18), they are

transferred to Department of Homeland Security ("DHS"), Immigration and Customs

Enforcement ("ICE") custody.  8 U.S.C. § 1232(c)(2)(B).  Under § 1232(c)(2)(B):

> If a minor . . . reaches 18 years of age and is transferred to the
> custody of the Secretary of Homeland Security, the Secretary shall
> consider placement in the least restrictive setting available after
> taking into account the alien's danger to self, danger to the
> community, and risk of flight.  Such aliens shall be eligible to
> participate in alternative to detention programs, utilizing a
> continuum of alternatives based on the alien's need for supervision,
> which may include placement of the alien with an individual or an
> organizational sponsor, or in a supervised group home.

8 U.S.C. § 1232(c)(2)(B).  Accordingly, persons who have aged out are afforded certain

protections upon their transfer to ICE custody.  *Garcia Ramirez v. U.S. Immigration and*

*Customs Enforcement*, -- F. Supp. 3d --, No. 18-508 (RC) 2025 WL 3563183, at * 2 (D.D.C.

Dec. 12, 2025).  Those protections require *all* persons who have aged out to be considered for

placement in the least restrictive setting.  *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL

2932726, at *9–10 (S.D.N.Y. June 12, 2018) (holding that individuals who age out while on

physical release but in legal custody of HHS are entitled to TVPRA protections); *F.S.S.M. v.*

*Wofford*, No. 1:25-cv-01518-TLN-AC, Slip Op., 2025, WL 3526671, at *4–5 (E.D. Cal. Dec. 9,

2025) (holding that the petitioner who aged out was subject to the TVPRA, not § 1225(b)(2)).

## B.  Factual Background

Petitioner Samanpreet Singh is a 24-year-old Indian national who fled India due to

alleged persecution, physical violence, and death threats made against him and his family

2

(3:26CV133)

relating to their political affiliations.  ECF No. 1, ¶¶ 2, 23.  When Petitioner entered the United

States, on or about November 3, 2018, he was 17 years old.  DHS apprehended him shortly

thereafter and placed him in removal proceedings under 8 U.S.C. § 1229a, but did not identify

him as an "arriving alien."  ECF No. 1, ¶ 24; ECF No. 1-3.  He was released by ORR on

February 8, 2019, "pursuant to section 462 of the Homeland Security Act of 2002 and section

235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,"

into the care of an unrelated sponsor, Paramjit Singh, in Queens Village, New York.  ECF No. 1-

1.

Four years later, on February 17, 2023, the immigration court gave notice that

Petitioner's case was being taken off the calendar because he was: "eligible to seek asylum

before USCIS in the first instance (*e.g.*, pursuant to the [TVPRA])."  ECF No. 1-2.  ICE arrested

Petitioner on December 15, 2025, and he is currently detained in the Seneca County Jail.  ECF

No. 1, ¶ 26.  Petitioner has no criminal history and has an asylum application pending with U.S.

Citizenship and Immigration Services ("USCIS").  ECF No. 1, ¶ 27.  A master calendar hearing

has been scheduled for February 25, 2026.  *See* ECF No. 11 at PageID ##: 99–100.

## II.    DISCUSSION

### A.  Jurisdiction

The Government begins, as it has in numerous prior habeas challenges from noncitizens

in ICE custody, by insisting the Court lacks jurisdiction pursuant to 8 U.S.C. §§ 1252(b)(9) and

(g).  ECF No. 8 at PageID ##: 57–59.  As the Court (and many other courts around the country)

has articulated, the Government is mistaken.

First, the Government misapprehends § 1252(g) to bar judicial review of "*any* cause or

claim by or on behalf of any alien *arising from* the decision or action . . . to *commence*

3

(3:26CV133)

*proceedings*, adjudicate cases, or execute removal orders against any alien." ECF No. 8 at PageID #: 57 (original emphasis).  The Supreme Court "rejected as implausible" any claim that § 1252(g) bars judicial review over "all claims arising from deportation proceedings."  *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020).  Section 1252(g) applies only to the three categories enumerated therein: the commencement, adjudication, and execution of removal orders.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).  Claims that do not seek "review of an order of removal, the decision to seek removal, or the process by which removability will be determined" are not barred by § 1252(g).  *Regents of Univ. of Cal.*, 591 U.S. at 19; *see Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (A "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims.").  Accordingly, detention-based challenges—as in the case at bar—which do not require the Court to address the merits of a removal order are not barred by § 1252(g).  *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010).

Respondents' § 1252(b)(9) argument is equally unavailing.  Under that provision, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order."  8 U.S.C. § 1252(b)(9).  The question of whether statutory provisions require detention without a hearing does not "arise from" actions taken to remove noncitizens.  *Ochoa Ochoa v. Noem*, No. 25-CV-10865, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018)).  Neither does § 1252(b)(9) strip courts of jurisdiction to determine whether agencies comply with federal law and their own regulations.  *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015); *Musunuru v. Lynch*, 831 F.3d 880, 887–88 (7th Cir. 2016); *Kurapati v.*

4

(3:26CV133)

*U.S. Bur. of Citizenship and Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009).

Respondents attempt to frame Petitioner's claims as merely "repackaging" his removal challenge under the guise of a detention-specific claim.  In support of this argument, Respondents point to a recent Third Circuit decision, *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), insisting that Petitioner's detention-claims arise from his removal proceedings.  Respondents' reliance on *Khalil* is misplaced.

The petitioner in *Khalil* was a lawful permanent resident of the United States, and an outspoken advocate for Palestinian human rights.  *Id.* at 266.  The United States Secretary of State determined that Khalil was removable for foreign policy reasons under the INA, prompting DHS to detain him and initiate removal proceedings.  *Id.*  Khalil challenged the lawfulness of his removal, claiming First Amendment retaliation, violations of the INA, the Administrative Procedure Act, and the *Accardi* doctrine.  *Id.* at 276.  In assessing his detention-based challenges, the Third Circuit concluded that § 1252(b)(9) stripped the district court of subject matter jurisdiction because Khalil's detention challenge was "inextricably linked to" his removal challenges.  *Id.* at 274.  In other words, in ruling on Khalil's detention claims, the court was asked to determine the lawfulness of removal, an "issue decided through the [petition-for-review] process." *Id.* at 276.

That is not this case.  Petitioner's challenge is "wholly collateral to the removal process," *see id.* at 274, relating specifically to the lawfulness of his detention under § 1225 without an individualized assessment as required under TVPRA.  ECF No 1, ⁋ 42.  In ruling on whether Petitioner's detention is lawfully detained, the Court does not disturb DHS's discretion to initiate, commence, or execute remove proceedings against Petitioner pursuant to § 1229a. Other

5

(3:26CV133)

courts have similarly distinguished *Khalil*, holding that the petitioners' detention-specific claims are not "inextricably linked" to removal proceedings because they address the lawfulness of detention, not removal proceedings.  *See, e.g.*, *Coronel-Hernandez v. Woosley*, No. 4:26-cv-20-DJH, 2026 WL 227011, at * 2–3 (W.D. Ky. Jan. 28, 2026) (distinguishing *Khalil* because petitioner only challenged ICE's authority to detain her without a bond hearing, not ICE's decision to initiate removal proceedings); *Cervantes-Garcia v. Bondi*, No. 1:26-cv-98-RP, 2026 WL 196519, at *3 n. 5 (W.D. Tex. Jan. 23, 2026) ("[L]ike the cases the Third Circuit specifically distinguished, the question here is detention-specific: only whether, as a matter of law, Petitioner falls under the mandatory detention authority of § 1225 while his removal proceedings are ongoing.").

Because Petitioner's claims relate to the lawfulness of his detention under § 1225  and his rights to a bond hearing or an individualized assessment under TVPRA, the Court's jurisdiction is not barred by § 1252(b)(9) or (g).

**B.  Exhaustion of Administrative Remedies**

Respondents next argue that the Court should exercise its discretion to require Petitioner to exhaust administrative remedies.  ECF No. 8 at PageID ##: 60–61.  The Government acknowledges that there is no statutory exhaustion requirement, rendering exhaustion prudential and within the Court's sound discretion.  *See, e.g., Echavaria Morales v. Noem*, No. 3:25-cv-2691, 2026 WL 100583, at *2 (N.D. Ohio Jan. 14, 2026) (Pearson, J.) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).  Although "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies," *see Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025), *appeal pending No. 25-1965 (6th Cir.)*, the Court and other district courts within the Sixth Circuit have utilized the Ninth Circuit's three-factor test

6

(3:26CV133)

(*see United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)) to require

exhaustion when:

> (1) agency expertise makes agency consideration necessary to
> generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate
> bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its
> own mistakes and to preclude the need for judicial review.

*Echavaria Morales*, 2026 WL 100583, at \*2 (collecting cases).

 All three factors weigh in Petitioner's favor.  First, the issues raised in the habeas petition

are pure legal questions and do not require an administrative record be developed.  Second,

because Petitioner's habeas petition includes, *inter alia*, a due process claim, the administrative

scheme (*i.e.* appeal to the Board of Immigration Appeals ("BIA")) is likely futile.  Finally,

administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies

in this case.  As such, requiring Petitioner to go through the administrative process would be

fruitless and a waste of time.

 Even if these factors weighed in favor of requiring administrative exhaustion, the Court

may still waive administrative exhaustion "when the interests of the individual weigh heavily

against requiring administrative exhaustion, or exhaustion would be futile and unable to afford

the petitioner the relief he seeks," or when "delay means hardship."  *Lopez-Campos*, 797 F.

Supp. 3d. at 778–79.

 In this case, exhausting administrative remedies would be futile.  "Waiver based on

futility is appropriate when an administrative agency 'has predetermined the disputed issue' by

having a 'clearly stated position' that the petitioner is not eligible for the relief sought."

(3:26CV133)

*Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025) (quoting *Cooper v. Zych*, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009)); *see Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile).  The Government's position regarding mandatory detention and bond hearings under § 1225 and § 1226 is clearly articulated in two recent BIA decisions: *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that an immigration judge "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission") and *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025) (holding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States . . . is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a).")  Both BIA opinions are binding on the agency and immigration courts, and which conclusively reject Petitioner's arguments in this case.

The Government concedes that Petitioner's likelihood of success on any administrative remedies is slight but nevertheless demands he be required to exhaust remedies because his case "might well prove to be one in which the agency changes or refines its policy."  ECF No. 8 at PageID #: 61 (quoting *Amaya-Velis v. Raycraft*, --- F. Supp. 3d ---, No. 4:26-cv-73, 2026 WL 100596, at *4–5 (N.D. Ohio Jan. 14, 2026) (Calabrese, J.).  This argument is as unpersuasive as it is disingenuous.  First, Respondents have not provided any evidence demonstrating even a remote possibility that the agency is or will change course concerning mandatory detention in this case.  ECF No. 8.  Second, and in any event, Petitioner's detention-specific claims raise constitutional due process violations, over which the BIA lacks authority.  *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d

8

(3:26CV133)

487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted)). Therefore, exhaustion in this case would be futile.

Furthermore, Respondents' argument ignores the relief sought: release from unlawful detention; an individualized assessment required under TVPRA; or, alternatively, a bond hearing under § 1226.  Indeed, requiring Petitioner to remain in detention during both the immigration court proceeding, which has yet to occur (ECF No. 11 at PageID ##: 99–100), and the BIA appeal process, which can take six months or more to complete, *see Lopez-Campos*, 797 F. Supp. 3d at 779, "'would result in the very harm the bond hearing was designed to prevent,' that is, prolonged detention without due process." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019)).  Finally, requiring Petitioner to remain in custody while exhausting administrative remedies would subject him to undue hardship.  *See Lopez-Campos*, 797 F. Supp. 3d at 779 ("When the liberty of a person is at stake, every day that passes is a critical one."); *Contreras-Lomeli*, 2025 WL 2976739, at * 3 ("Forcing Petitioner to endure six months or more of potentially unlawful detention would thus cause him great hardship.").

Accordingly, the exhaustion requirement is waived.

**C.  Mandatory Detention Requirements**

At issue in this case is whether Petitioner is correctly subject to mandatory detention under § 1225(b).  For the reasons set forth herein, Petitioner's detention is not governed by § 1225(b) but, rather, § 1232(c)(2)(B).

The analysis begins with the statutory framework.  Section 1225 applies to "applicants for admission," defined as any "alien present in the United States who has not been admitted or

9

(3:26CV133)

who arrives in the United States." 8 U.S.C. § 1225(a)(1). This provision mandates detention of two categories of noncitizens: (1) noncitizens arriving in the United States who indicate (a) an intention to apply for asylum, or (b) a fear of prosecution (8 U.S.C. § 1225(b)(1)(A)(ii) and (B)(ii)); and (2) noncitizens seeking admission who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents assert that all noncitizens not admitted or paroled into the country are "applicants for admission" under § 1225(a)(1) and, therefore, fall under § 1225(b)(2)(A)'s mandatory detention provision.

The Court previously joined the growing nationwide consensus rejecting Respondents' interpretation, holding that it ignores—and renders superfluous—other detention schemes within the INA, such as § 1226(c), which provides exceptions to discretionary detention under § 1226(a) that affords noncitizens (who are already in the country and subject to removal proceedings) bond hearings. *See, e.g., Echavaria Morales*, 2026 WL 100583, at *3–5; *Morales Chavez v. Dir. of Detroit Field Off.*, No. 4:25CV2061, 2025 WL 3187080, at *7, n. 6 (N.D. Ohio Nov. 14, 2025) (Lioi, C.J.) (collecting cases); *see also Guzman Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (citing *Morales Chavez, supra*). Unless and until the Sixth Circuit holds otherwise, the Court has no reason to depart from its previous statutory analysis regarding § 1225(b)'s application to all noncitizens without legal status.

Next, the Court must determine whether Petitioner's detention is governed by § 1225 or some other detention scheme. Petitioner's primary argument is that he is not subject to the mandatory detention under § 1225(b) because, as a person who has aged out under the TVPRA, he is subject to the detention scheme set forth in § 1232(c)(2)(B). ECF No. 1, ¶¶ 25, 72–73. Respondents failed to address Petitioner's arguments concerning the TVPRA (*see* ECF No. 8)

10

(3:26CV133)

and, accordingly, any challenge is waived.  *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 140 n.1 (6th Cir. 2016) (holding that arguments not raised in an opening brief are waived); *Huerta v. Garland*, No. 23-3361, 2024 WL 2142068, at *3 n. 4 (6th Cir. Feb. 8, 2024) (same). Nevertheless, the Court must assess whether Petitioner's argument holds water; and finds that it does, for two primary reasons.

First, Petitioner cannot be subject to both § 1225(b) detention and the protections afforded under § 1232(c)(2)(B) because the two provisions are mutually exclusive.  *F.S.S.M. v. Wofford*, No. 1:25-cv-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025); *Sandoval v. Rokosky*, No. 25-17229 (SDW), 2025 WL 3204746, at *2 (D.N.J. Nov. 17, 2025); *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) ("[A] noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.").

The plain text of the two statutes makes their conflict clear.  Under § 1232(c)(2)(B), DHS is required to: (1) make an individualized assessment for all persons who have aged out, including Petitioner, to determine whether they pose a flight risk or a danger to themselves or others; (2) consider alternatives to detention; and (3) place those persons, including Petitioner, in the least restrictive setting.  *Garcia Ramirez*, 2025 WL 3563183, at *9.  In contrast, § 1225(b) provides a limited exception to mandatory detention as prescribed in  8 U.S.C. § 1182(d)(5)(A), that is, parole for urgent humanitarian reasons or significant public benefit.  *F.S.S.M.*, 2025 WL 3526671, at *4 (citing *Jennings*, 583 U.S. at 300 ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released.") (original emphasis)); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th

11

(3:26CV133)

Cir. 2007) (releasing a noncitizen on their own recognizance necessarily means that individual was detained under § 1226 because such release is not available under § 1225.).

If, as Respondents insist, Petitioner is an "applicant for admission" under § 1225, then his release could only be pursuant to those exceptions prescribed in § 1182(d)(5)A). Indeed, Respondents admit as much in their opposition. ECF No. 8 at PageID #: 67–68. But Petitioner was not paroled for humanitarian reasons or significant public benefit. Instead, he was released by ORR to an unrelated sponsor consistent with the TVPRA's least restrictive placement requirements. ECF No. 1-1. Four years later (and after Petitioner had aged out), an immigration judge issued a "Notice of Intent to Take Case Off of the Court's Calendar," indicating that Petitioner was eligible to seek asylum in the first instance under the TVPRA. ECF No. 1, ¶ 25; ECF No. 1-2. These facts indicate that Petitioner was initially detained and released under the TVPRA provisions, not § 1225. It is illogical to now treat Petitioner as an "applicant for admission" under § 1225 seven years after he entered the country under a different statutory scheme. *See Salvador v. Bondi*, No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR— be treated as an 'applicant for admission' defies logic.").

Second, the Government's decision to release Petitioner pursuant to the TVPRA seven years ago "created a reasonable expectation that he would be entitled to retain his liberty under the TVPRA's protection." *F.S.S.M.*, 2025 WL 3526671, at * 5. Similar reasoning has been applied to individuals released under § 1226; once removal proceedings are initiated under § 1226(a), the government cannot change course and subject individuals to § 1225's mandatory

12

(3:26CV133)

detention.  *See Lopez Benitez*, 795 F. Supp. 3d at 486 (holding that the government cannot rely on § 1225 to deny a bond hearing to a petitioner initially released under § 1226); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (same).  Nearly every court that has reviewed DHS's attempt to apply § 1225(b) *post-hoc* has rebuked the agency, *see, e.g., Sandoval v. Raycraft*, No. 2:25-cv-12987, 2025 WL 2977517, at *8 n.8 (W.D. Mich. Oct. 17, 2025) (collecting cases), holding instead that "[a]n agency must defend its actions based on the reasons it gave when it acted."  *Id.* (quoting *Regents of Univ. of Cal.*, 591 U.S. at 24); *Quinteros Cornejo v. Andrews*, No. 1:25-cv-02062 JLT HBK, 2026 WL 237748, at * 7 (E.D. Cal. Jan. 29, 2026) (holding that the petitioner was released into the interior under the TVPRA, "suggesting § 1225(b)(2) is unlawful as applied to him.").

Petitioner was initially detained and released by ORR consistent with the TVPRA. Accordingly, he remains protected under § 1232(c)(2)(B) of the TVPRA and is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2).

### D.  Due Process

Petitioner's procedural due process claims are assessed in two steps: first, whether he has a protected liberty interest under the Due Process Clause; and second, what procedures are necessary to ensure deprivation of his interests are constitutional.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Each step is considered in turn.

#### 1.  Petitioner's Liberty Interest

Under the Due Process Clause, the Government is prohibited from depriving any person of liberty without due process of law.  U.S. Const. amend. V.  Freedom "from government custody, detention, or other forms of physical restraint [ ] lies at the heart of the liberty that

13

(3:26CV133)

Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). These protections extend to noncitizens subject to removal proceedings. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025).

Citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Respondents argue that Petitioner's mandatory detention does not violate due process because he was provided all the process due to him under § 1225. ECF No. 8 at PageID ##: 70–71. Respondents' argument is not well taken. As the Court explained in *E.V. v. Raycraft*, Respondents' reliance on *Thuraissigiam* is misplaced because the petitioner in that case was detained shortly after crossing the border and never released from custody and, therefore, never established a protected liberty interest. No. 4:25-cv-2069, 2025 WL 3122837, at *10 (N.D. Ohio Nov. 7, 2025) (Pearson, J.) (citing *Thuraissigiam*, 591 U.S. at 114–15, 140). Petitioner in this case was released from ORR custody in 2019 and has since lived in the United States in reliance on the Government's initial determination that he was not a flight risk or a danger to himself or the community.

Furthermore, Respondents' argument completely ignores the requirements of the TVPRA, which governs Petitioner's detention. Petitioner has an interest in, and is therefore entitled to, a compliant decision from DHS regarding his individualized assessment and "least restrictive placement" determination under § 1232(c). *See Garcia Ramirez*, 2025 WL 3563183, at *14–15. In addition, for seven years, Petitioner has been living in the United States in reliance on the Government's initial determination to release him under the TVPRA. *See F.S.S.M.*, 2025 WL 3526671, at * 5. Therefore, Petitioner has a protected liberty interest to remain out of detention pursuant to the TVPRA.

    *2. The* Mathews *Analysis*

14

(3:26CV133)

Having established Petitioner has a protected liberty interest, the Court applies the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine what process is necessary to ensure any deprivation of that liberty interest accords with the Constitution. *F.S.S.M.*, 2025 WL 3526671, at * 6; *see Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255 at *6 (W.D. Mich. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)) (holding the *Mathews* balancing test applies in the context of immigration detention). Under that test, the Court must weigh three factors: (1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation of such interests; and (3) the government's interest, including fiscal and administrative burdens additional procedures may entail. *Id.*; *Ballestros v. Noem*, No. 3:25-cv-594, 2025 WL 2880831, at *4 (W.D. Ky. Oct. 9, 2025). All three factors demonstrate Petitioner has a right to a pre-detention hearing before a neutral decisionmaker in compliance with the TVPRA.

The first factor weighs in Petitioner's favor. Freedom from detention is one of the "most elemental of liberty interests." *Ballestros*, 2025 WL 2880831, at *4 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). As discussed at length above, Petitioner has lived in the United States and built community connections for seven years in reliance on the Government's initial decision to release him under the TVPRA provisions. He has, therefore, created a strong interest in his continued liberty under the protections of the TVPRA.

The second factor—the risk of erroneous deprivation—also weighs in Petitioner's favor because he was re-arrested without any procedure or evidentiary findings. *Lopez*, 2018 WL 2932726, at *11; *Garcia Domingo v. Castro*, --- F. Supp. 3d ---, No. 1:25-cv-00979-DHU-GJF, 2025 WL 2941217, at *4 (D.N.M. Oct. 15, 2025). In addition to conducting the individualized assessment required under § 1232(c)(2)(B), other district courts have required DHS to

15

(3:26CV133)

demonstrate a change in circumstances warranting *before* re-detaining a person who has aged

out. *See e.g.,* R.D.T.M., 2025 2686866, at *4–5 (citing *Morrissey*, 408 U.S. at 482) (analogizing

pre-deprivation hearing requirements for individuals who age out under the TVPRA with pre-

deprivation hearing requirements for parole revocation); *Quinteros Cornejo*, 2026 WL 237748 at

*9 (holding that post-deprivation hearings inadequately protect the liberty interests of individuals

who age out and, instead, a hearing *before* the deprivation occurs is necessary); *see also Lopez v.

Noem*, No. 2:25-cv-1288 JB/DLM, 2026 WL 252513, at *6 (D.N.M. Jan. 30, 2026) (collecting

cases) (holding that due process requires a pre-deprivation bond hearing before re-detaining

noncitizens who have previously been released into the interior on bond under § 1226).  The

purpose for pre-deprivation hearings is to guard against arbitrary and capricious agency action.

*See Quinteros Cornejo*, 2026 WL 237748, at *10 ("DHS's failure to abide by [the TVPRA]'s

clear mandate . . . suggests that Respondents are engaging in an arbitrary and capricious

application of the regulation.").

      The Government has not offered any evidence that a TVPRA-compliant assessment was

completed, that alternatives to detention were considered, or that a pre-deprivation hearing was

afforded to Petitioner.  Neither has the Government demonstrated a material change in

circumstances warrants Petitioner's re-detention.  Indeed, the record indicates the opposite.

Petitioner has a pending asylum application and is currently scheduled to appear before an

immigration judge on February 25, 2026, for a master calendar hearing.  ECF No. 11 at PageID

##: 99–100.  There is no indication that he is uncooperative with USCIS or has failed to appear

at any schedule hearings.  In addition, Petitioner has no criminal record, demonstrating his is not

a danger to himself or others.  Therefore, the risk of erroneous deprivation is high without

adequate safeguards, *i.e.*, a TVPRA-compliant decision and a pre-deprivation hearing.

(3:26CV133)

Finally, the third factor contemplates the Government's interest, including administrative and fiscal burdens, of providing the pre-detention hearing.  The Government offers no argument that providing Petitioner with a pre-detention hearing would be burdensome.  ECF No. 8. Nevertheless, the Court recognizes the Government's interest in enforcing immigration policies, including ensuring that noncitizens appear at removal proceedings.  *Escobar-Ruiz*, 2025 WL 3039255, at *7.  That does not, however, translate into an interest in detaining Petitioner without any hearing or process.  *See Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *14 (D. Ariz. Aug. 11, 2025) (concluding the Government failed to identify specific justifications outweighing the individual's constitutionally protected liberty interests.).  Neither does DHS have discretion to ignore congressional directives explicitly set forth in the statute to provide individuals who age out with TVPRA protections.  *Garcia Ramirez*, 2025 WL 3563183, at *8.  Indeed, Respondents are squandering, rather than preserving resources, by detaining Petitioner who was cleared to live outside of detention seven years ago and has done so without incident.

Because the *Mathews* factors weigh in Petitioner's favor, he is entitled to a bond hearing that should have occurred before he was detained.  Accordingly, Respondents violated Petitioner's Fifth Amendment due process rights when they re-detained him without a pre-deprivation bond hearing and his detention is, therefore, unlawful.  The writ for habeas corpus is granted and shall issue.

17

(3:26CV133)

### III.    CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 1) is granted.

**It is hereby ordered** that:

1.      Respondents are hereby ordered to release Petitioner immediately.

2.      Respondents are enjoined from subjecting Petitioner to any post-release monitoring or supervision, including, but not limited to, GPS monitoring or travel restrictions.

3.      Respondents are enjoined from re-detaining Petitioner under § 1225(b) without first complying with constitutional and TVPRA protections, including affording Petitioner with a pre-deprivation hearing before a neutral decisionmaker, during which the Government must show by clear and convincing evidence that Petitioner is a flight risk or a danger to himself or the community, consistent with § 1232(c)(2)(B), such that his physical custody is justified.

4.      Respondents shall submit certification that Petitioner has been released from custody within seven days of this Order.

Because Petitioner's writ for habeas corpus is granted, his Motion for Temporary Restraining Order (ECF No. 10) is denied as moot.


       IT IS SO ORDERED.


 February 18, 2026                                          /s/ Benita Y. Pearson
 Date                                               Benita Y. Pearson
                                                   United States District Judge

18